## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 20-41592 |
| The Comet Clothing Company, LLC, | Chapter 11(Subchapter V) |
| Debtor. | |

### NOTICE OF HEARING AND MOTION OF DEBTOR OBJECTING TO THE CLAIM OF KMART HOLDING CORPORATION (CLAIM NO. 10) AND MEMORANDUM OF LAW

TO:   CLAIMANT KMART HOLDING CORPORATION AND THE ENTITES SPECIFIED IN LOCAL RULE 3007-1.

1.   The Comet Clothing Company, LLC (the "Debtor") by and through its undersigned attorney, hereby moves this Court for the relief requested below and gives notice of hearing.

2.   The Court will hold a hearing on the Debtor's Motion at **1:30 p.m. on Tuesday, June 1, 2021**, or as soon thereafter as counsel may be heard, in Courtroom No. 2B of the United States Courthouse at 316 North Robert Street, St. Paul, Minnesota, before the Honorable William J. Fisher, United States Bankruptcy Judge.

3.   Any response to this motion must be filed and served not later than on Thursday, May 27, 2021, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY SERVED AND FILED, THE COURT MAY ENTER AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT A HEARING.**

4.   This Court has jurisdiction over this motion pursuant to 28 U.S.C §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1. This is a core proceeding.

5.     This Motion arises under 11 U.S.C. § 502, and is filed under Fed. R. Bankr. P. 3007 and Local Rules 3007-1 and 9013-1 through 9013-3.

## BACKGROUND

6.     On the June 12, 2020, the Debtor filed a voluntary Petition for Relief pursuant to Chapter 11, Small Business Reorganization Act of 2019 ("SBRA") Subchapter V of Title 11 of the United States Code (the "Bankruptcy Code").

7.     On June 16, 2020, the Court filed a Notice of Chapter 11 Bankruptcy Case which, among other things, established August 11, 2020 as the deadline by which creditors, excluding governmental units, must file proofs of claim [Docket No. 20].

8.     On June 27, 2020, the Debtor filed a set of schedules of assets and liabilities and statement of financial affairs ("Schedules"), setting forth the assets and liabilities of the Debtors. Additionally, in the ordinary course of business, the Debtor maintained books and records that reflect, among other things, the Debtor's aggregate liabilities and the specific amounts owed to each of their creditors.

9.     On March 25, 2021, the court entered an order ("Confirmation Order") [Docket No. 241] confirming the *Second Amended Second Plan of Reorganization of the Debtor* (the "Plan"). The effective date of the plan occurred on April 9, 2021 (the "Effective Date") [Docket No. 252].

10.    The Plan authorizes the Debtor, as the Reorganized Debtor under the Plan, to file and prosecute claim objections. *See Plan*, Article 8, Sections 8.1 and 8.3.

11.    On August 7, 2020, Kmart Holding Corporation ("Kmart") filed a proof of claim, identified as claim number 10 (the "Kmart Claim"). The Kmart claim asserts a

total claim of $332,742.75, all of which is a general unsecured claim and no amount asserted as an administrative priority claim under 11 U.S.C. § 507(a)(2).

12. The Kmart Claim arises from prepetition amounts allegedly due and owing based upon preferential payments Kmart allegedly made to the Debtor, as explained in that certain demand letter dated August 30, 2019 from Kmart's attorneys to the Debtor and attached to the Kmart Claim as Exhibit 1.

13. The Debtor objects to the Kmart Claim. The Debtor denies that it received any preferential payments, as alleged by Kmart in the Kmart Claim, and, accordingly, the Kmart Claim should be expunged and disallowed in its entirety as discussed below.

## MEMORANDUM OF LAW

14. Through its objection, the Debtor seeks entry of an order pursuant to § 502(b) of the Bankruptcy Code and Rule 3007 of the Bankruptcy Rules expunging and disallowing in its entirety the Kmart Claim.

15. Section 502 of the Bankruptcy Code, provides, in pertinent part, as follows: "a claim or interest, proof of which is filed under § 501 of [the Bankruptcy Code], is deemed allowed unless a party in interest . . . objects." 11 U.S.C. § 502. Section 502(b)(1) provides that a court shall not allow a claim if "such claim is unenforceable against the debtor in property of the debtor, under any agreement or applicable law . . ." 11 U.S.C. § 502(b)(1).

16. As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity in the amount of the claim under Section 502 (a) of the Bankruptcy Code. *Gran v. IRS (In re Gran)*, 964 F.2d 822, 827 (8th Cir. 1992). A proof of claim loses this *prima facie* presumption under Bankruptcy

3

Rule 3001(f) if an objecting party refutes at least one of the allegations that are essential to the claims legal sufficiency. *Gran*, 964 F.2d at 827; *In re Oriental Rug Warehouse Club, Inc.*, 205 B.R. 407, 410 (Bankr. D. Minn. 1997). If the objecting party produces such evidence, the burden of proof shifts to the claimant to produce evidence of the validity of the claim: "In other words, once an objection is made to the proof of claim, the ultimate burden of persuasion as to the claim's validity and amount rests with the claimant." *Oriental Rug*, 205 B.R. at 410 (citations omitted); *In re Armstrong*, 347 B.R. 581, 583 (N.D. Tex. 2006) ("the ultimate burden of proof always lies with the claimant" citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000)). In making these determinations, a court looks to the governing substantive law. *In re Ford*, 125 B.R. 735, 737 (E.D. Tex. 1991); *In re Gridley*, 149 B.R. 128, 132 (Bankr. D.S.D. 1992).

17.  The Kmart Claim is deficient because it fails to establish all of the elements under Section 547(b) of the Bankruptcy Code that any of the payments to Debtor during the Preference Period are preferential (collectively referred to herein as the "Challenged Payments"). The Kmart Claim, as discussed in its attorney's demand letter attached as Exhibit 1 to the Kmart Claim, offers no proof of certain elements of Section 547(b) including, among others, that Kmart was insolvent at the time that it made the Challenged Payments to the Debtor and that the Challenged Payments to the Debtor enabled the Debtor to receive more than it would have received under the conditions set forth in Section 547(b)(5) of the Bankruptcy Code.

18.  However, assuming arguendo, that Kmart could satisfy all of the elements under Section 547(b) of the Bankruptcy Code, the Challenged Payments are not avoidable under Sections 547(c)(1), (2), and (4) of the Bankruptcy Code.

19.     During Kmart's bankruptcy proceedings, the Debtor timely filed two proofs of claim, Claim No. 16712 and Claim No. 1736 (the "Debtor's POCs"). Through the Debtor's POCs, the Debtor asserted claims in the cumulative amount of $786,620.50. The documentation that the Debtor filed with and in support of the Debtor's POCs, established that during the 90 day period prior to Kmart's commencement of its bankruptcy proceedings (the "Preference Period"), the Debtor sold and delivered to Kmart goods in the amount of $588,600, an amount well in excess of the challenged payments of $332,742.75.

20.     Section 547(c)(1) of the Bankruptcy Code protects transfers made by debtor to a creditor during the preference period that do not result in a diminution of the estate because unsecured creditors are not harmed by the targeted transfer if the estate was replenished by an infusion of assets that are of roughly equal value to those that were transferred. *See*, *e.g.*, *Electronic Metal Products, Inc. v. Bittman (In re Electronic Metal Products, Inc.)*, 916 F.2d 1502, 1505 (10th Cir. 1990); *Lowery v. U.P.G., Inc. (In re Robinson Drilling, Inc.)*, 877 F.2d 32, 33-34 (10th Cir. 1989). Because the Debtor sold and delivered to Kmart during the Preference Period goods worth $255,860 more than the Challenged Payments, the Debtors' estate was not diminished on account of the Challenged Payments and, therefore, the Challenged Payments are not avoidable under Section 547(c)(1).

21.     In addition to the incontrovertible fact that during the Preference Period, the Debtor sold and delivered to Kmart goods worth substantially more than the Challenge Payments, the Debtor sold and delivered these goods to Kmart during the Preference Period at the specific instance and request of Kmart. These sales were made by the Debtor while Kmart processed for payment and paid to the Debtor the Challenged Payments. Between

late July 2018 and mid-August 2018, Kmart also requested from the Debtor documentation so that Kmart could, among other things, confirm that the goods the Debtor had invoiced for payment prior to the Preference Period had been ordered and received by Kmart. In other words, prior to the Preference Period, Kmart had not completed its internal review to confirm the Debtor's sale to Kmart of goods worth approximately $332,000. Within 30 days after Kmart confirmed these sales, Kmart made payment to the Debtor while the Debtor continued to sell and deliver goods to Kmart, as requested by Kmart.

22. The Debtor's sale and delivery to the Defendants of over $588,000 of goods during the Preference Period comprises "new value" under section 547(a)(2) of the Bankruptcy Code. The Debtor extended this new value to Kmart during the Preference Period at the request of Kmart in exchange for the Challenged Payments during the Preference Period and, therefore, the exchange of the Challenged Payments for the goods was intended by Kmart and the Debtor to be contemporaneous and was in fact substantially contemporaneous. *See, e.g.*, *Tyler v. Swiss Am. Secs., Inc. (In re Lewellyn & Co., Inc.)*, 929 F.2d 424 (8th Cir.1991); *In re Jannel Industries, Inc.*, 245 B.R. 757, 35 Bankr. Ct. Dec. (CRR) 226 (Bankr. D. Mass. 2000).

23. In sum, while the Debtors processed for payment and paid to Comet the Challenged Payments. Consequently, the Challenged Payments were made in exchange for these goods sold by Comet; the Challenged Payments were intended to be a contemporaneous exchange based upon the conversations between Comet and representatives of the Debtors; and the Challenged Payments were in fact substantially contemporaneous, as evidenced by the fact that during the Preference Period: (i) Comet sold $588,600 worth of goods to the Debtors and (ii) the Debtors paid Comet the Challenged

Payments. *In re 360networks (USA) Inc.*, 338 B.R. 194, 204 (Bankr. S.D.N.Y. 2005); *In re Pameco Corp.*, 356 B.R. 327, 338 (Bankr. S.D.N.Y. 2006).

24. In addition, to the extent, if any, any of the Challenged Payments cannot be avoided under Section 547(c)(1) of the Bankruptcy Code, they cannot be avoided under Section 547(c)(2) of the Bankruptcy Code. In the ordinary course of business between Kmart and the Debtor, Kmart paid the Debtor for the goods the Debtor sold to Kmart within 30 to 90 days from the date of Kmart confirmed its receipt of these goods. Typically, Kmart would request additional documentation from the Debtor to confirm these sales.

25. The Debtor sold goods to Kmart for years prior to its bankruptcy case. During this time, the goods the Debtor sold to Kmart were items of clothing including, without limitation, sports apparel such as T-shirts, sweatshirts, hoodies, leggings, pants, shirts and other sports apparel that display professional sports-licensed artwork. These goods were ordered by Kmart through and by its individual stores, which, prior to the comprised more than 687 stores located throughout the United States. It was not unusual for specific orders to involve Kmart's purchase of less than 20 units of clothing per order for a dollar amount of about $120 per order. The cumulative number of orders during a particular calendar month could be in the hundreds.

26. To process these orders for payment to the Debtor, Kmart required that the Debtor provide the purchase order information for each store, proof of delivery of the goods to the ordering store consistent with the purchase order, and the Debtor's invoice confirming the sale, delivery and price of these goods. Routinely, Kmart confirmed the purchase orders with the individual stores and matched the proof of delivery provided by the Debtor with the invoiced amounts the Debtor claimed as due under specific purchase orders. Unless

information for the transactions was deemed by Kmart to be deficient, Kmart routinely paid the Debtor between 86 and 145 days from the invoice date.

27.     However, the timing of Debtors' payment of the Debtor's invoices would be extended where Kmart initially declined to pay them. Under these circumstances, Kmart had implemented a process by which a vendor, such as the Debtor, could challenge a declination of payment by submitting and/or resubmitting documents which Kmart would then review and change its prior decision to decline payment of invoices. The time between the Debtor's submission and/or resubmission of this documentation under this scenario and Kmart's subsequent review of this documentation and approval for payment of previously declined invoices was between 21 and 57 days.

28.     Based upon the different ordinary course of business time periods for Kmart's payment of (i) invoices which Kmart paid upon Comet's initial submission of documents (86 and 145 days), and (ii) invoices which Kmart initially declined to pay, but subsequently paid after the Debtor submitted documentation challenging Kmart's declination of payment (21 to 57 days), Kmart paid the Challenged Payments in the ordinary course of business and, as such, these payments are protected as non-avoidable payments under section 547(c)(2).

29.     In Kmart's attorney's letter, the Challenged Payment under Check No. 32034709 dated September 4, 2018, paid Debtor's invoices dated June 4, 2018 and June 7, 2018 in the cumulative amount of $20,650. These invoices were paid by Kmart between 89 and 92 days from their invoice dates, well within the timeframe for ordinary course payments. In addition, the Challenged Payment under Check No. 781005211, dated

8

September 11, 2018 in the amount of $829, paid an invoice dated June 7, 2018, which is 96 days from the invoice date, well within the timeframe for ordinary course payments.

30.   The payment of the remaining invoices identified in the Kmart's attorney's letter were paid by Kmart within forty or fewer days from the date the Debtor submitted documentation pertaining to invoices Kmart had previously declined to pay. The last documentation the Debtor submitted to Kmart to complete its review of these invoices was submitted by email dated July 26, 2018 from the Debtor to Kmart. The information submitted by this email includes information pertaining to 526 invoices that Kmart had previously declined to pay.

31.   By mid-July of 2018, the dollar amount of invoices as to which Kmart had declined payment was approximately $317,000. The basis upon which these invoices had not been paid by Kmart was segregated by Kmart into three separate categories designated by the following code numbers: Code 71, Code 73 and Code 77. The dollar amount of the Code 71 unpaid invoices was $93,811; the dollar amount of the Code 73 unpaid invoices was $64,970; and the remaining dollar amount of the unpaid invoices was designated as Code 77.

32.   Within forty (40) days of the Debtor's submission of the last documentation pertaining to $317,000 of unpaid invoices, Kmart paid Comet $313,929.10 under Check No. 32034709 dated September 4, 2018. This period of forty days from the Debtor's submission of documentation pertaining to these unpaid invoices and the date of Kmart's payment is well within the ordinary course of business between Kmart and the Debtor as to the payment of invoices Kmart initially declined to pay and the date of the

9

Debtor's submission of documentation to Kmart challenging the Kmart's declination decision.

33.  Moreover, to the extent that any portion of the Challenged Payments are protected as non-avoidable transfers under sections 547(c)(1) or (2), they are protected transfers under section 547(c)(4). As discussed above, the Debtor sold and delivered goods to the Kmart after the Kmart's August 1, 2018 payment of $17,984.65 well in excess of this payment. The Debtor also sold and delivered to Kmart goods in the amount of $65,376 after the Debtor received Kmart's payment of $313,929.10 under Check No. 32034709 dated September 4, 2018. To the extent, if any, any amount of the Challenged Payments are not otherwise protected from avoidance under sections 547(c)(1) or 547(c)(2), then $82,760.65 of the Challenged Payments are nevertheless sheltered from avoidance by subsequent new value provided by the Debtor to Kmart.

34.  A significant public policy underpinning Sections 547(c)(1) and (4) of the Bankruptcy Code is to encourage creditors to continue to do business with troubled businesses, which may allow some to avoid bankruptcy altogether.[1] *See*, *e.g.*, *In re Micro Innovations Corp.*, 185 F.3d at 332; *Fitzpatrick v. Rockwood Water Wastewater & Natural Gas Sys. (In re Tennessee Valley Steel Corp.)*, 201 B.R. 927, 939 (Bankr.E.D.Tenn.1996). Moreover, "a creditor who contributes new value in return for payments from the incipient bankruptcy ... should not later be deemed to have depleted the bankruptcy estate to the disadvantage of other creditors." *Charisma Inv. Co. v. Airport Sys., Inc. (In re Jet Florida Sys., Inc.)*, 841 F.2d 1082, 1083 (11th Cir.1988) (per curiam). *See also Lubman v. C.A. Guard Masonry Contractor, Inc. (In re Gem Constr. Corp. of Va.)*, 262 B.R. 638, 645

---

[1] The purpose of section 547(c)(4) is to encourage creditors to deal with the prepetition debtor. *Wolinsky v. Central Vermont Teachers Credit Union (In re Ford)*, 98 B.R. 669, 682–84 (Bankr.D.Vt.1989).

Active\086972\003\5816942.v1

(Bankr.E.D.Va.2000)("[Section 547(c)(4)] is grounded in the principle that the transfer of new value to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of other creditors.").

35. The Debtor's sale and delivery to Kmart during the Preference Period of goods of a value substantially greater than the Challenge Payments satisfy the policies underpinning Sections 547(c)(1) and (4) of the Bankruptcy Code. By making sales and deliveries of goods to Kmart, the Debtor continued to extend credit to Kmart during the Preference Period. In addition, Kmart's estate was not depleted to the detriment of other creditors on account of the Challenged Payments because Kmart received from the Debtor $588,000 in goods in exchange for the transfers/payments of $332,742. In other words, because the Debtor sold and delivered to Kmart during the Preference Period goods of a value substantially greater than the Challenged Payments, Kmart's estate was not depleted to the detriment of Kmart's other creditors because of the Challenged Payments.

36. Failure to disallow and expunge the Kmart Claim would result in Kmart receiving an unwarranted recovery against the Debtor to the detriment of other similarly situated creditors with properly filed claims. Elimination of the Kmart Claim will enable the Debtor to maintain a more accurate claims register and will not prejudice the other claimants in this case. Accordingly, the Debtor requests the Court enter an order disallowing and expunging the Kmart Claim in its entirety.

37. Pursuant to Local Rule 9013-2 (a), this Motion is verified and includes a memorandum of law.

38. Pursuant to Local Rule 9013-2(a), the Debtor gives notice that it may, if necessary, call Robert Truax, Chief Executive Officer of the Debtor, Rob DeWolfe, the

11

financial advisor to the Debtor, and Jill O'Flanagan, the Debtor's Director of Business Development to testify regarding the facts set forth in this motion. The business address of Ms. O'Flanagan and Mr. Truax is 6117 Blue Circle Drive, Suite 100, Minnetonka, MN 55343; the business address of Mr. DeWolfe is 800 LaSalle Avenue, Suite 1620, Minneapolis, MN 55402.

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

A. sustaining the Debtor's objection to and disallowing and expunging in its entirety the Claim of Kmart Holding Corporation, Claim No. 10 in the Claims Register of the Debtor;

B. granting such other and further relief as the court deems just and equitable.

Dated: April 26, 2021         **FABYANSKE, WESTRA, HART& THOMSON, P.A.**

By:   */s/ Paul L. Ratelle*
Paul L. Ratelle (MN #127632)
333 South Seventh Street
Suite 2600
Minneapolis, MN 55402
612-359-7600
612-359-7602 (f)
Email: pratelle@fwhtlaw.com

***ATTORNEYS FOR THE COMET CLOTHING COMPANY, LLC***

## **VERIFICATION**

I, Robert Truax, am the Chief Executive Officer of The Comet Clothing Company, LLC, and I declare under penalty of perjury, that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated: April 26, 2021                             */s/ Robert Truax*_____
                                                               Robert Truax

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Case No. 20-41592 |
| The Comet Clothing Company, LLC, | Chapter 11(Subchapter V) |
| Debtor. | |

**ORDER GRANTING MOTION OBJECTING TO CLAIM OF KMART HOLDING CORPORATION (CLAIM NO. 10)**

This matter is before the Court on the Debtor The Comet Clothing Company, LLC's Motion ("Motion") objecting to the claim of Kmart Holding Corporation.

**IT IS ORDERED:**

1. The Motion is granted.

2. The filed proof of claim of Kmart Holding Corporation, identified as claim number 10, is hereby disallowed and expunged in its entirety, as no further amounts are due and owing.

3. This Order applies to any future claims, or amendments to existing claims, arising out of obligations alleged to be owed to Kmart Holding Corporation, whether or not identified by a specific claim number, schedule number, or related claim number or schedule number.

4. The Debtor is authorized to take any and all actions that are necessary and appropriated to give effect to this Order.

5. This Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

Dated: _____             _____
                                     William J. Fisher
                                     Judge of the United States Bankruptcy Court